UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JOHN PIEROTTI,

                    Petitioner,                         **MEMORANDUM & ORDER**

    -against-                                   Civil Action No. 03-3958 (DRH)

JAMES WALSH, Superintendent, Sullivan
Correctional Facility,

                    Respondent.
--------------------------------------------------------X

**APPEARANCES:**

**For Petitioner:**
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
By:    Christopher Harris, Esq.
        Daniel D. Adams, Esq.

**For Respondent:**
Nassau County District Attorney
262 Old Country Road
Mineola, NY 11501
By:    Jason P. Weinstein, Esq.
        Margaret E. Mainusch, Esq.

**HURLEY, Senior District Judge:**

        John Pierotti ("Pierotti" or "Petitioner") petitions this Court for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254, vacating his conviction for two counts of murder in the first

degree, one count of criminal possession of a weapon in the third degree, and one count of

criminal possession of a weapon in the third degree.  In support of the petition, Petitioner

maintains he was denied a fair trial because he could not hear the proceedings (the "audibility

claim"), and was denied effective assistance when trial counsel failed to insist on

accommodations.  Additionally, Petitioner asserts he was denied his right to effective assistance

of appellate counsel as a result of that counsel's failure to raise the audibility claim and the ineffectiveness of trial counsel. For the reasons set forth below, the petition is denied.

## BACKGROUND

### I. Summary

The crimes underlying Petitioner's conviction were the December 23, 1998 shooting deaths of Willis Frost and Gerard Kennedy outside the Dragger Inn, a bar in Baldwin, New York. The evidence at trial suggested that Petitioner had been drinking that evening and was armed with a loaded handgun. Outside of the Dragger Inn, Petitioner became involved in an altercation with Frost and Kennedy, who were in a van parked next to the bar. When the altercation ended, both Frost and Kennedy were dead. In statements to the police, Petitioner admitted he shot both individuals but claimed he was acting in self-defense. Petitioner was arrested, indicted and subsequently convicted of two counts of first degree murder, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree after a jury trial in Nassau County.

Petitioner now claims that, due to a severe hearing impairment and two broken hearing aids, he was unable to hear major portions of his trial and was therefore deprived of his Sixth Amendment rights. According to Petitioner, because of the nature of his hearing impairment he was only able to hear and understand a speaker speaking directly to him while facing him and that, any time there were multiple speakers, or a single speaker facing away from him, his hearing was severely limited. Petitioner normally wears two hearing aids but at the time of the trial his only working hearing aid had been broken.

## II.	Pre-trial Proceedings

A multi-day pretrial hearing was conducted in January and February 2000 on the issue of the voluntariness of certain statements by Petitioner.  Pierotti was represented at the hearings by Michael Fishman, Esq. ("Fishman").   Prior to the February 28, 2000 session, the direct examination of Pierotti was concluded.  At the beginning of the February 28 session, when the Clerk inquired if Defendant was ready, Pierotti answered "no."  Fishman then went on to explain to the judge that Petitioner's had an issue concerning medication.  He also advised the judge that Pierotti's "hearing aid was broken in the jail" and that "he has extreme difficulty hearing, so that if we are going to proceed, we have got to make some accommodations for his hearing loss at this time."  (Tr. 132.)[1]  The judge denied the request for a continuance, focusing on the medication issue.  After addressing some housekeeping matters, Pierotti was called back to the stand and the following colloquy took place:

> THE COURT:	Mr Walsh [prosecutor], do you want the podium?
> MR. WALSH:	Yes, Judge.
> THE COURT:	For the record, this is a very small courtroom here in the west wing.  It was originally designed for misdemeanor trials.
> Mr. Walsh, please keep your voice up.
> Mr. Pierotti, if you have any problem hearing anything, you let me know.
> All right, you may inquire, counsel.
> THE CLERK:	Mr. Pierotti, I would just like to remind you, you are still under oath,  You are still under oath.
> THE WITNESS:	Are you talking to me?
> THE CLERK:	Yes.
> THE COURT:	You are still under oath, Mr. Pierotti.
> THE DEFENDANT:	Yes.
> MR. FISHMAN:	May I ask you to give one more

---

[1] Mr. Fishman did not mention to the court that Pierotti normally wore two hearing aids.

warning to Mr. Pierotti that if he doesn't completely hear the question, don't assume what it is but ask to have it read back to him so –

> THE DEFENDANT:    I can't hear you from here.
>
> THE COURT:    All right, we are going to – Mr. Walsh come up.
>
> I am going to tell you, Mr. Pierotti, you heard me very clearly when I started as to whether - - you heard the clerk from a lot further away as to whether or not the defendant was ready to proceed.  You could hear that, and you answered that question.
>
> Please don't play games with me.  I am a finder of fact here.  I am telling you what I observed up to this point.  Now let's stop.
>
> All right, Mr. Walsh, please keep your voice up.

(Tr. 138-39.)   Pierotti then testified and responded to questions; at times he asked the prosecutor to repeat certain questions.  (*See id.* at 139-97.)  Once, Pierotti responded, "I didn't hear you." (*Id.* at 188.)  The prosecutor repeated the question and Pierotti reponded.  After that exchange Pierotti did not indicate any problem with an ability to hear.  (*See generally* Hearing Tr.).  Later in the hearing he evidenced an ability to follow the proceeding when he interrupted a detective's testimony by yelling out, "That's a lie."  *(Id.* at 203.)

## II.    Trial and Sentencing

The trial commenced in June 2000 with Pierotti now represented by Mark Goidell, Esq. ("Goidell").  At that time Petitioner's hearing aid was still broken.  (Hinckle Declar. ¶ 8.)  The transcript does not reveal that the Judge was apprised of that fact; nor does it reveal any requests or complaints by Petitioner or his counsel regarding any hearing problems.  *(See generally* Trial Tr.)  During the charge conference, the court directly questioned Petitioner regarding his decision not to request certain manslaughter instructions.  Petitioner was asked if he understood what was going on and responded "yes."  He did not complain of or mention an inability to hear.

Pierotti asserts that he continuously advised Mr. Goidell that he could not hear the proceedings. (Hinckle Declar. ¶ 8.)   According to an affidavit submitted by Goidell, Pierotti told him he had no working hearing aids during one of their early meetings at the jail.  (Hinkle Declar. Ex. 14-G.)  He recalls "but [is] not certain, that the court turned on the assisted listening devices,[2] either in response to a direct request that I made or perhaps sua sponte" and does not recall any other steps taken to assist Pierotti."  (*Id.*)  The record, however, does not reveal any such request.  Goidell further stated:

> During the trial, Mr. Pierotti indicated to me on various occasions that he could not hear what was happening.  When this happened, I either whispered to him, wrote him notes to explain what was happening, or indicated to him to be quiet so that I could listen to what was happening in court.
> During breaks, I was able to discuss specific witness testimony with Mr. Pierotti, and he seemed aware of gist of the testimony and the proceedings,  However, I never directly asked Mr. Pierotti during these breaks how well he was able to follow the proceedings.
> During the trial, at least one of Mr. Pierotti's family members came to speak to me about Mr. Pierotti's problems hearing the proceedings at his trial.  However, I do not remember the specifics of that conversation.

(Hinkle Declar. Ex. 14-G.)

On June 26, 2000, the jury found Pierotti guilty on two counts of first degree murder, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree.  (Trial Tr. 852-56.)

Petitioner was sentenced on August 31, 2000.  During several exchanges with the court, neither Pierotti nor his counsel referenced an inability to hear either then or during the trial.

---

[2] The record does not contain a description of the nature of the referenced device.

**III.    Direct Appeal**

On appeal, Pierotti was represented by new counsel, Mark Diamond, Esq.  The brief on appeal contained seven arguments, none of which related to claims of ineffective trial counsel or the lack of accommodation at trial for Pierotti's hearing impairment.

According to Petitioner, he attempted to contact Diamond several times to discuss several issues including his inability to hear the trial proceedings and trial counsel's failure to raise the hearing issue during the trial.  After several letters to Diamond, Petitioner finally received a letter in response dated June 1, 2001, explaining that the brief had been filed and why Diamond did not raise some of the arguments Pierotti raised in his letters.

The Appellate Division, Second Department, affirmed Pierotti's conviction on February 25, 2002 and leave to appeal to the New York State Court of Appeals was denied on June 25, 2002.  *People v. Pierotti*, 291 A.D.2d 574, 737 N.Y.S.2d 879 (2d Dept.), *leave to appeal denied*, 98 N.Y.2d 679 (2002).

**IV.    The Habeas Petition and Exhaustion**

**A.    The Initial Habeas Issues**

Petitioner timely filed the instant pro se petition for a writ of habeas corpus on August 7, 2003, asserting the same seven arguments presented in his state appeal.  With the petition, Pierotti filed other papers which, as discussed below, referenced his inability to hear and the ineffectiveness of counsel.  Thereafter the Legal Aid Society and Latham & Watkins entered the case as Pierotti's pro bono counsel and filed a reply addressing the following issues:  Petitioner's inability to hear during his trial and the ineffective assistance of both his trial and appellate

counsel.

### B.    Exhaustion

#### 1.    The 440 Motion

In November 2006 Petitioner's counsel informed this Court that Petitioner intended to exhaust the three issues addressed in the reply.  A petition to vacate Pierotti's conviction pursuant to New York Criminal Procedure Law ("CPL") §440.10 was filed in the Nassau County Criminal Court alleging that Pierotti's trial counsel was ineffective for failing to bring to the trial court's attention, and secure accommodations for, Pierotti's hearing impairment.

In support of the petition, the affirmation of trial counsel, Mark Goidell, was submitted. In the affirmation, Goidell admitted that he was aware  early in the relationship that Pierotti normally wore hearing aids but did not have any working aids at that time.  Mr. Goidell stated that he did apprise the court of petitioner's problem, but was not sure if he did so on the record, and believed, but was not certain that the court turned on the assisted listening devices.   Further, Pierotti did indicate on various occasions to Goidell that he could not hear what was happening and "[w]hen this happened, [Goidell] either whispered to him, wrote notes to him to explain what was happening or indicated to him to be quiet so [Goidell] could listen to what was happening in court."  (Goidell April 21, 2006 Aff.)  During breaks Goidell discussed specific witness testimony with Petitioner and "he seemed aware of gist of the testimony and the proceedings" but Goidell "never directly" asked him "how well he was able to follow proceedings."   Goidell admitted that during breaks family members spoke to him about petitioner's hearing problems but disclaimed any memory of the specifics of those conversations.

(*Id.*) [3]

Numerous affidavits from family members and an expert were submitted in support of the petition, attesting to the extent and severity of Pierotti's hearing impairment and containing explanations as to how Pierotti could not hear the trial proceedings notwithstanding that he was able to testify at the pretrial hearing without undue difficulty. (*See* Hinckle Ex. 8.)

On February 26, 2007, Petitioner's motion was denied. The court noted that there was no mention of Petitioner's hearing impairment in his direct appeal as of right and that it was not asserted until the filing of the reply memorandum in the instant habeas petition. Continuing, the court denied the petition, stating:

> Counsel for defendant has quite methodically chronicled instances which were set forth on the record before the Trial Court that establishes the issue of defendant's alleged hearing impairment. Nonetheless, in the direct appeal this claim was not raised. Since the issue of defendant's hearing impairment was available pre appeal, the issue could have been raised upon appeal and his failure to do so precluded consideration of his claim now. . . .
> It is well settled law in this State that an ineffective assistance counsel claim which is based upon facts which are apparent in the trial record should have been raised upon direct appeal and the failure to so do precludes relief pursuant to CPL §440.10. . . .

(Hinkle Ex. 11.) A motion for leave to appeal the decision on the CPL 440.10 petition was denied on June 4, 2007. (Hinkle Declar. ¶ 20.)

### 2. Writ of Error Coram Nobis

Petitioner then filed an application with the Appellate Division, Second Department, on

---

[3] In an additional affirmation dated November 28, 2006, Goidell denied the claims by Petitioner and his family that they fully apprised him of the severity of Petitioner's hearing impairment and denied telling the family that Petitioner did not need to hear all of the proceedings.

February 14, 2008 for a writ of error coram nobis to vacate the Appellate Division's order on

direct appeal on the grounds of ineffective assistance of appellate counsel. In support thereof, it

was argued that appellate counsel was ineffective for failing to raise both the audibility issue and

the lack of effective assistance of trial counsel. On November 5, 2008, the Appellate Division

denied the writ, holding that Pierotti had "failed to establish that he was denied the effective

assistance of appellate counsel." *People v. Pierotti*, 56 A.D.3d 494, 865 N.Y.S.2d 912 (2d Dept.

2008). Thereafter, leave to appeal to the Court of Appeals was denied. *People v. Pierotti*, 12

N.Y.3d 761 (2009).

### C. The Habeas Proceedings Resume

By letter dated June 23, 2009, Petitioner advised this Court that all claims were fully

exhausted. The matter was referred to a magistrate judge for a Report and Recommendation.

That magistrate judge ordered additional briefing. The case was thereafter reassigned to

Magistrate Judge Brown.

### 1. Judge Brown's Report and Recommendation

Judge Brown issued a Report and Recommendation dated August 13, 2014

recommending that the writ be denied. Judge Brown concluded that Petitioner's audibility and

ineffective assistance of trial counsel claims are procedurally barred because they were not raised

on direct appeal. Assuming cause for the default, Judge Brown concluded that no actual

prejudice existed. As the claim of ineffective assistance of appellate counsel was denied on the

merits by the Appellate Division, Judge Brown reviewed that denial under the AEDPA's

deferential standard and concluded it was not contrary to, or an unreasonable application of,

clearly established federal law. Judge Brown also recommended that the petition be denied as to

the seven claims that were initially raised in the habeas petition and that Respondent's motion to strike the reply memorandum which for the first time clearly articulated the audibility and ineffectiveness claims also be denied.

### 2. Objections to the Report and Recommendation

Petitioner filed objections covering all aspects of the Report and Recommendation vis a vis his claims that the denial of an accommodation for his hearing impairment violated the Sixth Amendment and that his trial and appellate counsel did not provide effective assistance. He did not object to Judge Brown's recommendation that the petition be denied as to the seven claims that were initially raised in the habeas petition. Respondent did not file any objections.

### DISCUSSION

## I. Legal Standards

### A. Standard of Review of a Report and Recommendation

Federal Rule of Civil Procedure 72(b) provides that when a magistrate judge issues a report and recommendation on a matter "dispositive of a claim or defense of a party," the district court judge shall make a de novo determination of any portion of the magistrate judge's disposition to which specific written objection has been made. Fed. R. Civ. P. 72(b); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). As to those portions that are not objected to, the standard of review is one for clear error in accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72.

### B. Habeas Corpus and the AEDPA

A federal court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he

is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(b)(1).   In order to obtain relief, an individual in custody must demonstrate, inter alia, that he has: (1) exhausted all of his State remedies; (2) asserted his claims in his State appeals such that they are not procedurally barred from federal habeas review; and (3) if his appeals were decided on the merits, overcome the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Philbert v. Brown*, 2012 WL 4849011, at *5 (E.D.N.Y. Oct. 11, 2012)**.**

### 1.  AEDPA Deference Standard

Under the AEDPA, a writ of habeas corpus shall not be granted on a claim that was "adjudicated on the merits" in the state court unless that state court's decision was "was contrary to," or involved an "unreasonable application" of "clearly established Federal Law" as determined by the United States Supreme Court or "was based on an unreasonable determination of the facts" in light of the evidence presented to the state court.  28 U.S.C. § 2254 (d); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010).    "A state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment."  *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal quotation marks omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the [United States] Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (internal quotation marks omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a United States Supreme Court case, or it "confronts a set of facts that

are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (internal quotation marks and citations omitted). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (internal quotation marks and citation omitted).

Under the AEDPA, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (internal quotation marks omitted).

### 2.     Exhaustion

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."). The Supreme Court has held:

> Because the exhaustion doctrine is designed to give the state courts
> a full and fair opportunity to resolve federal constitutional claims
> before those claims are presented to the federal courts . . . state
> prisoners must give the state courts one full opportunity to resolve
> any constitutional issues by invoking one complete round of the
> State's established appellate review process.

*O'Sullivan*, 526 U.S. at 845; *accord Smith v. Duncan*, 411 F .3d 340, 347 (2d Cir. 2005). Thus, a

petitioner is required to have presented each claim to all available levels of the state courts. *See,*

*e.g., Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[T]he prisoner must fairly present his claim in

each appropriate state court (including a state supreme court with powers of discretionary

review.")) (citations and internal quotation marks omitted). The petitioner must also have fairly

presented the "federal nature" of each claim to the state courts.  *Id.; Duncan v. Henry*, 513 U.S.

364, 365–66 (1995) (per curiam); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

If a petitioner has not exhausted his claims in state court but no longer has a state forum

in which to raise his claims, the claims are deemed exhausted and procedurally barred.  *Bossett v.*

*Walker*, 41 F.3d. 825, 829 (2d Cir. 1994).

### 3. Procedural Default

Under the procedural default doctrine, federal habeas is unavailable when "(1) a state

court has declined to address a prisoner's federal claims because the prisoner has failed to meet a

state procedural requirement, and (2) the state judgment rests on independent and adequate state

procedural grounds."  *Walker v. Martin*,  – U.S. –, 131 S. Ct. 1120, 1127 (2011) (internal

quotation marks and brackets omitted.)   The procedural rule or requirement must be "firmly

established" and "regularly followed" in order to qualify as an adequate procedural ground.

*Beard v. Kindler*, 558 U.S. 53, 60-61 (2009).

Despite having defaulted on his federal claim in state court, a state prisoner can obtain

federal habeas review either by demonstrating "cause for [the] state court default," and actual

prejudice as a result of the violation of federal law, or showing that the failure to consider the

claim will result in a "fundamental miscarriage of justice."  *Edwards v. Carpenter*, 529 U.S. 446,

451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)[4].

Cause may be established in two ways. The first way is to demonstrate that some objective factor, external to petitioner's defense impeded the efforts to raise the claim in state court, *see McClesky v. Zant*, 499 U.S. 467, 493 (1991), such as "a showing that the factual or legal basis for a claim was not reasonably available to counsel," *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999). Second, futility can constitute cause where prior state law has consistently rejected a particular constitutional claim. *Gutierrez v. Smith*, 702 F.3d 103, 111-12 (2d Cir. 2012).

The requirement for "prejudice" is met by demonstrating "actual prejudice" from the errors alleged. The error must result in "actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (internal quotation marks omitted); *accord Strickland v. Washington*, 466 U.S. 668, 693 (1984); *U.S. v. Frady*, 456 U.S. 152, 170 (1982).

## II.    Overview of Discussion

Prior to addressing any substantive issues, the Court must determine which substantive issues are appropriately before the Court. Respondent has taken the position that the audibility and ineffective assistance of counsel claims are not properly before the Court as they were not included in the original petition and therefore untimely.

---

[4]       The "fundamental miscarriage of justice" exception to the procedural default doctrine has explicitly been tied to innocence of the petitioner. This exception is grounded upon the crucial function of habeas review for " 'correcting a fundamentally unjust incarceration.' " *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162 (2d Cir. 2000). This exception has not been raised in this case.

### III.    The Audibility and Ineffective Assistance Claims are Timely

On August 7, 2003, Pierotti submitted a pro se habeas petition, together with other filings.  (*See* DE 1-6.)  These other filings contained the following allegations: Pierotti's hearing aids were crushed before trial leaving him without the ability to hear anything except very loud sounds; he is legally deaf in both ears; he was unaware of what was happening at his trial; he tried to ask his attorney what was going on but the attorney signaled him to be quiet; the court disregarded his inability to hear; his attorney was ineffective.  (*See id.*)

Where, as here, a petitioner appears pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Applying this standard to Pierotti's initial filings, the statements concerning his inability to hear, the court's refusal to accommodate his disability, and counsel's ineffectiveness adequately raised his audibility and ineffective assistance claims before the expiration of the AEDPA statute of limitations.  *Cf. Lara v. United States*, 2009 WL 700826, at *1 9E.D.N.Y. Mar. 13, 2009 (pro se letter requesting extension of time to file habeas petition sufficiently raised claim of ineffective assistance of counsel because letter noted that petitioner pled guilty under duress due to pressure from his attorney).  Accordingly, these claims are timely and properly considered by the Court.

The first issue the Court will address is the Audibility Claim.

### IV.    The Audibility Claim

Petitioner's audibility claim is procedurally barred because it was not raised on direct appeal.  (*See* DE 57 at p. 14 ("Petitioner acknowledges that he defaulted on his audibility claim. [He] agree[s] [it] could have reasonably been raised on direct appeal . . . .").) Accordingly, in

order to have this claim reviewed, Petitioner is required to demonstrate cause and prejudice.

Petitioner maintains that the cause of his procedural default is the ineffectiveness of his appellate counsel. It is to this topic that the Court now turns.

### A.    Cause

Petitioner's claim of ineffective assistance of appellate counsel was presented to the New York courts and denied on the merits, *see Pierotti*, 865 N.Y.S.2d 912. Therefore, the Court's cause analysis must be conducted under the deferential standard the AEDPA accords state adjudications on the merits. *Cf. Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587 (2000) ("[I]neffective assistance adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim" which must be exhausted and not itself subject to a procedural default.)

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Id.* at 687. *See Dunham v. Travis,* 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong, the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id.* at 690, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal."

*Dunham*, 313 F.3d at 730.  Also, the Second Circuit has instructed that a reviewing court should be "highly deferential" to counsel's performance, because "'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Pratt v. Greiner*, 306 F.3d 1190, 1196 (2d Cir. 2002) (quoting *Strickland*, 466 U.S. at 689).

Concededly, the audibility claim could have been raised on direct appeal.  But that it could have been raised, however, does not mean that the failure to raise it constitutes ineffective assistance of counsel.  Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).   And courts should not "second-guess reasonable professional judgments and impose . . . a duty to raise every 'colorable' claim suggested by a client." *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  "On habeas review a federal court may reverse a state court ruling only where it was so lacking in justification that there was no possibility for fairminded disagreement." *Fischer v. Smith*, 780 F.3d 556 (2d Cir. 2015) (internal quotation marks omitted).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Particularly important in this case is that, "[i]n assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case viewed as of the time of counsel's conduct, . . . and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528 (2d Cir. 1994) (internal quotation marks and citations omitted).   Here, appellate counsel's decision to advance what he apparently believed were stronger claims falls within the wide range of reasonable professional assistance.  Notably, the

record available for appeal did not include any objection at trial that Petitioner could not hear the proceedings, or even a statement to the Court that Petitioner remained without his hearing aids. Nor did the record include the various affidavits that have been presented to this Court. Petitioner did refer to his inability to hear the proceeding in two of his three letters to appellate counsel. These letters, however, raised a litany of issues and did not alert counsel to the fact that Petitioner had complained to trial counsel that he could not hear. (*See* Hinckle Declar. Exs. 14-N to 14-O.)

Additionally, the pre-trial hearing, trial, and sentencing records reveal that, without his hearing aids, petitioner generally answered questions during cross-examination and responded to the court. (Hrg. Tr. 139-97, 203; Trial Tr. 720-22; Sentencing Tr. 11-15). Thus, although the record contained several instances where Petitioner had difficulty hearing, it also reflected that Petitioner seemed to understand the testimony and proceedings. *Cf. People v. Stickles*, 267 A.D.2d 604, 606-07, 700 N.Y.S.2d 248 (N.Y. App. Div. 1999) ("We also find unavailing defendant's claim that he was denied a fair trial because of a hearing impairment. Prior to jury selection, this issue was addressed by the County Court and defendant agreed that if he experienced any difficulty in hearing the proceedings, he would advise the court. Defendant's counsel made no request for other accommodation and defendant responded to all of the court's inquiries during pre-trial proceedings without apparent difficulty.")

Given these factors, appellate counsel may have reasonably determined that the impairment issue was less likely to succeed on appeal than the issues that were raised. Accordingly, this Court cannot conclude that the Appellate Division's determination on the petition for a writ of error coram nobis that Pierotti failed to establish that he was denied

effective assistance of appellate counsel because of counsel's failure to raise the audibility issue on appeal was either contrary to, or an unreasonable application of, clearly established federal law.

Petitioner's failure to establish cause for the procedural default makes it unnecessary to address "prejudice" and precludes this Court from addressing the merits of his audibility claim. The Court now turns to the ineffective assistance of trial counsel claim.

## V.    Ineffective Assistance of Trial Counsel

Petitioner maintains that the ineffectiveness of trial counsel claim must be considered by this Court *de novo* because although the state court found it was procedurally barred, the denial on procedural grounds is a rule that is not "firmly established and regularly followed in this specific circumstance."  (DE 39 at 16; DE 57 at 21.)  It is this threshold issue that the Court addresses first. *See Whitley v. Ercole*, 642 F.3d 278, 285 (2d Cir. 2011) ("[W]here, as here, the State contends that the challenged decision rests on a state law ground that is independent of the federal question and adequate to support the judgment our practice is to evaluate the sufficiency of that state law ground in the first instance.") (internal quotation marks and citations omitted)

### A.    Is the Claim Procedurally Barred?

As noted earlier, Petitioner's claim of ineffective assistance of trial counsel was raised for the first time in a motion to vacate his conviction under CPL § 440.10.  The motion was denied on the ground that  "[i]t is well settled law in this State that an ineffective assistance counsel claim which is based upon facts which are apparent in the trial record should have been raised upon direct appeal and the failure to so do precludes relief pursuant to CPL §440.10(2)(c)."  A motion for leave to appeal the decision on the CPL 440.10 petition was denied.

Pursuant to CPL § 440.10(2)(c), a "court may deny a motion to vacate a judgment" when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." N.Y. Crim Pro. Law § 440.10 (2)(c).

"[W]hen a state court judgment rests on independent and adequate state law grounds, including a petitioner's failure to meet state procedural requirements, a federal court may not consider the petitioner's substantive claims." *Bonilla v. Portuondo*, 2004 WL 350694, at *9 (S.D.N.Y. Feb. 26, 2004) (Report and Recommendation), *adopted by* 2004 WL 1782174 (S.D.N.Y. Aug. 9, 2004). A state court's "express reliance" on a state procedural rule "constitutes an 'independent' state law ground for that decision . . . even when the state court addresses the merits in reaching an alternative holding." *Whitley v. Ercole*, 642 F.3d 278, 286, 286 n. 8 (2d Cir. 2011). "A procedural bar is adequate if it is based on a rule that is 'firmly established and regularly followed by the state in question.' " *Pearson v. Greiner*, 2004 WL 2453929, at *9 (S.D.N.Y. Nov. 3, 2004) (internal quotation marks omitted).

In order to determine whether the state procedural ground is adequate, the Court considers the following "guideposts" that have been set forth by the Second Circuit:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner

> had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting *Lee v. Kemna*, 534 U.S. 362, 381–85, 122 S. Ct. 877, 151 L. Ed.2d 820 (2002)). "[T]he adequacy of a state procedural bar is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.' " *Id.* (quoting *Lee*, 534 U.S. at 387, 122 S. Ct. 877); *see also Johnson v. Sabourin*, 2005 WL 2663039, at *3 (S.D.N.Y. Oct. 14, 2005) ("If the state procedural rule [is] employed infrequently, unexpectedly, or freakishly . . . [it] is not an . . . adequate state ground.' ") (internal quotation marks omitted).

In the present case, it is apparent that the trial court relied on § 440.10(2)(c) in denying Petitioner's ineffective assistance claim. Accordingly, the first guidepost arguably favors a finding of adequacy. *See Johnson*, 2005 WL 2663039 at *4, *5-6 (finding that state court's reliance on § 440.10(2)(b) was adequate, in part, because the court had cited this rule as basis for its decision and petitioner's ineffective assistance claim could have been "heard on the merits" if petitioner had raised it on direct appeal).

Considering the second guidepost, the Court concludes that application of the procedural bar of  CPL § 440.10(2)(c) was not "demanded in the specific circumstances presented." *Cotto*, 331 F.3d at 240. The New York Court of Appeals has held that, "[g]enerally, the ineffectiveness of counsel is not demonstrable on the main record," and, therefore, "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under CPL 440.10." *People v. Brown*, 45 N.Y.2d 852, 853–54, 410 N.Y.S.2d 287, 382 N.E.2d

1149 (1978); *cf. Bonilla*, 2004 WL 350694, at *10 (noting that "a review of New York caselaw demonstrates that CPL § 440.10(2)(c) is not regularly followed in the context of ineffectiveness [sic] assistance claims"). While some ineffective assistance claims, including claims based solely on failures to object, may appear on the record and therefore be more properly considered on direct appeal, *see, e.g., Sweet v. Bennett*, 353 F.3d 135, 139–40 (2d Cir. 2003), " 'mixed claim[s] of ineffective assistance that depend[ ], in part, upon matters that do not appear on the record' " are not "procedurally barred" by New York Criminal Procedure Law § 440.10(2)(b), and the "440.10 proceeding is the appropriate forum for reviewing [such claims] in [their] entirety." *People v. Maxwell*, 89 A.D.3d 1108, 933 N.Y.S.2d 386, 388 (2d Dept. 2011); *People v. Stokes,* 126 A.D.3d 1018, 3 N.Y.S.3d 618, 619 (2d Dept. 2015); *People v. Barbuto*, – N.Y.S.3d–, 126 A.D.3d 1501, 2015 WL 1381365 (4th Dept. 2015) (holding that with respect to claim of ineffective assistance of counsel based on waiver of a jury trial*,* there is nothing in the record on appeal that would raise a colorable issue, but if defendant can demonstrate facts, not recited in the record, that would raise such an issue, it can be pursued by a CPL 440.10 motion); *People v. Freeman*, 93 A.D.3d 805, 940 N.Y.S.2d 314, 315 (2d Dept. 2012) (finding that, because defendant's "mixed claim" of ineffective assistance of counsel "cannot be resolved without reference to matter outside the record, a CPL 440.10 proceeding is the appropriate forum for reviewing the ineffective assistance claim in its entirety") (internal quotation marks omitted); *cf. People v. Love*, 57 N.Y.2d 998, 1000, 457 N.Y.S.2d 238 (1982) ("[W]e cannot conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that might have been developed had an appropriate after-judgment motion been made pursuant to CPL 440.10.") (internal quotation marks omitted).

Here, Petitioner presented a mixed ineffective assistance claim in his § 440.10 motion because his claim rested partly on his trial counsel's failure to object to the lack of accommodation at trial for his hearing impairment which does appear on the record—and partly on the affidavits attesting to petitioner's inability to hear during the trial and his trial counsel's knowledge of that fact, and the affidavit of the expert explaining the nature of Petitioner's hearing impairment and why Petitioner was able to hear adequately during, for example, his direct examination at the pre-trial hearing and during the charge conference but not during the testimony of witnesses. Accordingly, "compliance with" New York Criminal Procedural Law § 440.10(2)(c) was not "demanded in the specific circumstances presented," *Cotto*, 331 F.3d at 240, because "sufficient facts" did not "appear on the record . . . to permit adequate review" upon direct appeal, N.Y.Crim. Proc. Law § 440.10(2)(b). *Cf. Constant v. Sabol*, 987 F. Supp. 2d 323, 352 (S.D.N.Y. 2013) (finding that where petitioner presented a mixed ineffective assistance claim in his CPL §440.10 motion compliance with CPL § 440.10(2)(b) was not demanded because additional facts not of record were required to permit adequate review); *Pearson*, 2004 WL 2453929, at *10 n. 3 (noting that, "where the ineffective assistance claim is not record-based, federal habeas courts have held that the rule of CPL § 440.10(2)(c) is not 'adequate' "); *Bonilla*, 2004 WL 350694, at *10 (finding that, because "New York courts have . . . held that a claim challenging an attorney's failure to call witnesses does not sufficiently appear on the record so as to require dismissal of that claim if raised for the first time on a § 440.10 motion, . . . it is appropriate to review the merits of the petitioner's claim").

The third guidepost is whether Pierotti's counsel "substantially complied with the state rule" and is the "most important consideration." *Whitley v. Ercole*, 642 F.3d 278, 290 (2d Cir.

2011 (quoting *Lee*, 534 U.S. at 382).  This consideration weighs strongly against Pierotti.

Appellate counsel did not comply with CPL 440.10(2)(b) as he did not raise ineffective

assistance of trial counsel on appeal.  *See Johnson*, 2005 WL 2663039 at *4, *5-6 (despite

potential " 'Catch–22' " posed by  belief that claim of ineffective assistance of counsel did not

appear on the record and thus would not have been reviewed on direct appeal, petitioner "should

have pursued both avenues of relief and, on appeal, focused his arguments on facts within the

record"); *see generally People v. Stewartson*, 2015 WL 1894277 (1st Dept. 2015) (holding that

claim of ineffective assistance of trial counsel is unreviewable on appeal because it involves

matters not reflected in, or fully explained by the record and, in the alternative, that to extent the

record permits review finding that defendant did receive effective assistance.)

Having considered the guideposts for whether a state procedural ground is adequate, the

Court concludes that CPL 440.10(2) (b) is an adequate procedural bar as its application in this

case is not "exorbitant."  *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007).  While this Court

if presented with the applicability of  CPL 440.10 (2)(c) may have ruled differently, this Court

has "no authority to question the state's interpretation of its own procedural law under these

circumstances."  *Whitley*, 642 F.3d  at 286.  *See Cotto v. Herbert*, 331 F.3d 217, 247 (2d Cir.

2003) ("Our task is not to determine whether [the state court] ruling was correct, but to determine

its adequacy to preclude federal habeas review.")

Because the Court has determined that CPL 440.10(2) (b) is an adequate procedural bar,

it may not address the merits of the petition unless Pierotti can show cause and prejudice.

### B.     Cause for the Procedural Default

As with his audibilty claim, Petitioner asserts that the cause of his default was the

ineffectiveness of appellate counsel. As discussed earlier, this Court must review the effectiveness of appellate counsel under the AEDPA's deferential standard.

Once again, appellate counsel's decision to advance what he apparently believed were stronger claims falls within the wide range of reasonable professional assistance. Notably, the record available for appeal did not include any objection at trial and there was no indication that that Petitioner could not hear the trial proceedings or that he complained to trial counsel that he could not hear. Additionally, a review of the trial record by appellate counsel would reveal that trial counsel was well prepared, cross-examined witness, and presented defense witnesses. Given that record, it would be reasonable for appellate counsel to conclude that ineffective assistance of trial counsel was less likely to succeed on appeal than the issues that were raised.

Viewed through the prism of the AEDPA's differential standard, the Appellate Division's conclusion that appellate counsel was effective is neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI. Ineffective Assistance of Appellate Counsel

The final assertion in support of the petition is the claim of ineffective assistance of appellate counsel, which claim was denied on the merits by the New York state court, *see Pierotti*, 865 N.Y.S.2d 912. As set forth in detail in Parts IV and V(C), *supra*, this Court cannot conclude that the Appellate Division's determination on the petition for a writ of error coram nobis that Pierotti failed to establish that he was denied effective assistance of appellate counsel because of counsel's failure to raise the audibility issue or ineffectiveness of trial counsel on appeal was either contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief based on ineffective assistance of appellate

counsel.

**VII.    Original Claims in the Petition**

Petitioner has not pursued the seven arguments originally raised in his petition, which issues were advanced on direct appeal.  Accordingly, they are deemed abandoned.

**VIII.    Certificate of Appealability**

Were the Court to address prejudice or the merits, Petitioner would, at the very least, be entitled to a hearing on his ineffective assistance of trial counsel claims.   This Court is particularly disturbed by trial counsel's apparent failure to request any accommodation for Petitioner despite his admission that "[d]uring the trial, Mr. Pierotti indicated to [him] on various occasions that he could not hear what was happening" and that he "never directly" asked Pierotti "how well he was able to follow proceedings."  (Goidell April 21, 2006 Aff.)

As the Second Circuit has recently held:

> [T]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. . . .This right stems from the Sixth Amendment's Compulsory Process and Confrontation Clauses, and guarantees a criminal defendant is provided with a meaningful opportunity to present a complete defense. . . .  In practical terms, this means that a criminal defendant must possess sufficient ability to consult with his lawyer with a reasonable degree of rational understanding; otherwise, the proceeding would be merely an invective against an insensible object.

*United States v. Crandall*, 748 F.3d 476, 481 (2d Cir. 2014)(quotation marks and citations omitted).  Moreover, "the Sixth Amendment right to participate in one's own trial encompasses the right to reasonable accommodations for impairments to that participation, including hearing impairments."  (*Id.*)  That right, however, "is limited to those reasonable accommodations that

are requested by the defendant before or during trial, or the need for which is, or should reasonably be, clear or obvious to the [judge]." *Id.* To the extent trial counsel was aware of Pierotti's hearing impairment and failed to request any accommodation, counsel failed to assure Pierotti received his constitutional rights.

Accordingly, the Court shall grant a certificate of appealability as to the following two issues:

(1)     Is Petitioner's claim of ineffective assistance of trial counsel procedurally barred?

(2)     If it is procedurally barred, has Petitioner demonstrated cause for this procedural default?

## CONCLUSION

For the reasons set forth above, the petition for habeas corpus is denied. A certificate of appealability shall issue with respect to the following questions: (1) Is Petitioner's claim of ineffective assistance of trial counsel procedurally barred? and (2) If it is procedurally barred, has Petitioner demonstrated cause for this procedural default? The Clerk of Court shall enter judgment accordingly.

SO ORDERED.

Dated: Central Islip, New York
       May 13, 2015

                                        /s/
                                        Denis R.  Hurley
                                        Senior District Judge