UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JOHN PIEROTTI,                                    **MEMORANDUM & ORDER**
                Petitioner,           03-CV-3958     (DRH)

    -against-

DAVID R. HARRIS, Superintendent, Green Haven
Correctional Facility,[1]

                Respondent.
-------------------------------------------------------X

**APPEARANCES:**

**For Petitioner:**
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
By:    Adam B. Shamah, Esq.
        Serrin A. Turner, Esq.

Brooks Pierce McLendon Humphrey & Leonard
200 Renaissance Plaza
230 North Elm Street
Greensboro, North Carolina 27401
By:    Daniel D. Adams, Esq.


**For Respondent:**
Nassau County District Attorney
262 Old Country Road
Mineola, New York 11501
By:    Sarah S. Rainowitz, Esq.


**HURLEY, Senior District Judge:**

       This habeas corpus petition returns to this Court for a ruling on the merits of John

Pierotti's ("Pierotti" or "Petitioner") claim of ineffective assistance of trial counsel. For

the reasons set forth below, the petition is conditionally granted.

---

[1] The Clerk of Court is directed to amend the caption as Petitioner's current custodian is the Superintendent of the Green Haven Correctional Facility. *See* DE 84.

# BACKGROUND

**I.   Summary**

The crimes underlying Petitioner's conviction were the December 23, 1998 shooting deaths of Willis Frost ("Frost") and Gerard Kennedy ("Kennedy") outside the Dragger Inn, a bar in Baldwin, New York. The evidence at trial suggested that Petitioner had been drinking that evening and was armed with a loaded handgun. Outside of the Dragger Inn, Petitioner became involved in an altercation with Frost and Kennedy, who were in a van parked next to the bar. When the altercation ended, both Frost and Kennedy were dead. In statements to the police, Petitioner admitted he shot both individuals but claimed he was acting in self-defense. Petitioner was arrested, indicted, and subsequently convicted of two counts of first degree murder, criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree after a jury trial in Nassau County.

Petitioner now claims that, due to a severe hearing impairment and two broken hearing aids, he was unable to hear major portions of his trial and was therefore deprived of his Sixth Amendment rights. According to Petitioner, because of the nature of his hearing impairment he was only able to hear and understand a speaker speaking directly to him while facing him and that, any time there were multiple speakers, or a single speaker facing away from him, his hearing was severely limited. Petitioner normally wears two hearing aids but at the time of the trial his only working hearing aid had been broken.

## II. The State Criminal Proceedings[2]

### A. Pre-trial Proceedings

A multi-day pretrial hearing was conducted in January and February 2000 on the issue of the voluntariness of certain statements by Petitioner. Pierotti was represented at the hearings by Michael Fishman, Esq. ("Fishman"). Prior to the February 28, 2000 session, the direct examination of Pierotti was concluded. At the beginning of the February 28 session, when the Clerk inquired if Defendant was ready, Pierotti answered "no." Fishman then went on to explain to the judge that Petitioner's had an issue concerning medication. He also advised the judge that Pierotti's "hearing aid was broken in the jail" and that "he has extreme difficulty hearing, so that if we are going to proceed, we have got to make some accommodations for his hearing loss at this time." (Tr. 132.)[3] The judge denied the request for a continuance, focusing on the medication issue. After addressing some housekeeping matters, Pierotti was called back to the stand and the following colloquy took place:

The judge denied the request for a continuance, focusing on the medication issue. After addressing some housekeeping matters, Pierotti was called back to the stand and the following colloquy took place:

> THE COURT: Mr Walsh [prosecutor], do you want the podium?
> MR. WALSH: Yes, Judge.
> THE COURT: For the record, this is a very small courtroom here in the west wing. It was originally designed for misdemeanor trials.
> Mr. Walsh, please keep your voice up.
> Mr. Pierotti, if you have any problem hearing anything, you let me know.
> All right, you may inquire, counsel.

---

[2] This recitation is taken principally from this Court's Memorandum & Order dated May 13, 2015.
[3] Mr. Fishman did not advise the court that Pierotti normally wore two hearing aids.

> THE CLERK: Mr. Pierotti, I would just like to remind you, you are still under oath. You are still under oath.
> THE WITNESS: Are you talking to me?
> THE CLERK: Yes.
> THE COURT: You are still under oath, Mr. Pierotti.
> THE DEFENDANT: Yes.
> MR. FISHMAN: May I ask you to give one more warning to Mr. Pierotti that if he doesn't completely hear the question, don't assume what it is but ask to have it read back to him so –
> THE DEFENDANT: I can't hear you from here.
> THE COURT: All right, we are going to – Mr. Walsh come up.
> I am going to tell you, Mr. Pierotti, you heard me very clearly when I started as to whether - - you heard the clerk from a lot further away as to whether or not the defendant was ready to proceed. You could hear that, and you answered that question.
> Please don't play games with me. I am a finder of fact here. I am telling you what I observed up to this point. Now let's stop.
> All right, Mr. Walsh, please keep your voice up.

(Tr. 138-39.) Pierotti then testified and responded to questions; at times he asked the prosecutor to repeat certain questions. (See id. at 139-97.) Once, Pierotti responded, "I didn't hear you." (*Id*. at 188.) The prosecutor repeated the question and Pierotti responded. After that exchange Pierotti did not indicate any problem with an ability to hear. (See generally Hearing Tr.). Later in the hearing he evidenced an ability to follow the proceeding, or at least some portion of it, when he interrupted a detective's testimony by yelling out, "That's a lie." (*Id.* at 203.)

### B. The Trial and Sentencing

The trial commenced in June 2000 with Pierotti now represented by Mark Goidell, Esq. ("Goidell"). Petitioner was still without his hearing aids. (Hinckle Declar. ¶ 8.) The transcript does not reveal that the Judge was apprised of that fact; nor does it reveal any requests or complaints by Petitioner or his counsel regarding any hearing problems. (*See generally* Trial Tr.) During the charge conference, the court directly questioned Petitioner regarding his decision not to request certain manslaughter

instructions. Petitioner was asked if he understood what was going on and responded "yes." He did not complain of or mention an inability to hear.

Pierotti asserts that he continuously advised Mr. Goidell that he could not hear the proceedings. (Hinckle Declar. ¶ 8.) According to an affidavit submitted by Goidell, Pierotti told him he had no working hearing aids during one of their early meetings at the jail. (Hinkle Declar. Ex. 14-G.) He recalls "but [is] not certain, that the court turned on the assisted listening devices,[4] either in response to a direct request that [he] made or perhaps sua sponte" and does not recall any other steps taken to assist Pierotti." (*Id*.) The record, however, does not reveal any such request. Goidell further averred:

> During the trial, Mr. Pierotti indicated to me on various occasions that he could not hear what was happening. When this happened, I either whispered to him, wrote him notes to explain what was happening, or indicated to him to be quiet so that I could listen to what was happening in court.
> During breaks, I was able to discuss specific witness testimony with Mr. Pierotti, and he seemed aware of gist of the testimony and the proceedings, However, I never directly asked Mr. Pierotti during these breaks how well he was able to follow the proceedings.
> During the trial, at least one of Mr. Pierotti's family members came to speak to me about Mr. Pierotti's problems hearing the proceedings at his trial. However, I do not remember the specifics of that conversation.

(Hinkle Declar. Ex. 14-G.)

On June 26, 2000, the jury found Pierotti guilty on two counts of first degree murder, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree. (Trial Tr. 852-56.)

---

[4] The record does not contain a description of the referenced devices.

Petitioner was sentenced on August 31, 2000. During several exchanges with the court, neither Pierotti nor his counsel referenced an inability to hear either then or during the trial.

### C. The Direct Appeal

On appeal, Pierotti was represented by new counsel, Mark Diamond, Esq. The brief on appeal contained seven arguments, none of which related to claims of ineffective trial counsel or the lack of accommodation at trial for Pierotti's hearing impairment.

According to Petitioner, he attempted to contact Diamond several times to discuss several issues including his inability to hear the trial proceedings and trial counsel's failure to raise the hearing issue during the trial. After several letters to Diamond, Petitioner finally received a letter in response dated June 1, 2001, explaining that the brief had been filed and why Diamond did not raise some of the arguments Pierotti raised in his letters.

The Appellate Division, Second Department, affirmed Pierotti's conviction on February 25, 2002 and leave to appeal to the New York State Court of Appeals was denied on June 25, 2002. *People v. Pierotti*, 291 A.D.2d 574, 737 N.Y.S.2d 879 (2d Dept.), *leave to appeal denied*, 98 N.Y.2d 679 (2002).

## III. The Habeas Petition and Exhaustion

### A. The Initial Habeas Issues

Petitioner timely filed the instant pro se petition for a writ of habeas corpus on August 7, 2003, asserting the same seven arguments presented in his state appeal. With the petition, Pierotti filed other papers that, as discussed below, referenced his inability to hear and the ineffectiveness of counsel. Thereafter the Legal Aid Society and Latham &

Watkins entered the case as Pierotti's pro bono counsel and filed a reply addressing the following issues: Petitioner's inability to hear during his trial, and the ineffective assistance of both his trial and appellate counsel.

**B.     Exhaustion**

1.     The 440 Motion

In November 2006, Petitioner's counsel informed this Court that Petitioner intended to exhaust the three issues addressed in the reply. A petition to vacate Pierotti's conviction pursuant to New York Criminal Procedure Law ("CPL") §440.10 was filed in the Nassau County Criminal Court alleging that Pierotti's trial counsel was ineffective for failing to bring to the trial court's attention, and secure accommodations for, Pierotti's hearing impairment.

In support of the petition, the affirmation of trial counsel, Mark Goidell, was submitted. In the affirmation, Goidell admitted that he was aware early in the relationship that Pierotti normally wore hearing aids but did not have any working aids at that time. Mr. Goidell stated that he did apprise the court of Petitioner's problem, but was not sure if he did so on the record, and believed, but was not certain that the court turned on the assisted listening devices. In addition, Goidell explained that Pierotti did indicate on various occasions that he could not hear what was happening and "[w]hen this happened, [he] either whispered to him, wrote notes to him to explain what was happening or indicated to him to be quiet so [he, Goidell] could listen to what was happening in court." (Goidell April 21, 2006 Aff.) During breaks Goidell discussed specific witness testimony with Petitioner and "he seemed aware of gist of the testimony and the proceedings" but Goidell "never directly" asked him "how well he was able to

follow [the] proceedings." Goidell admitted that during breaks family members spoke to him about petitioner's hearing problems but disclaimed any memory of the specifics of those conversations. (*Id*.)[5]

Numerous affidavits from family members and an expert were submitted in support of the petition, attesting to the extent and severity of Pierotti's hearing impairment and containing explanations as to how Pierotti could not hear the trial proceedings notwithstanding that he was able to testify at the pretrial hearing without undue difficulty. (See Hinckle Ex. 8.) For example, the trial courtroom was much larger and filled with background noise, and witnesses sat far from the defense table and testified facing the jury or examining attorney. (Shamah Ex. A at ¶¶ 9-11; *id*. Ex. E at ¶9; *id*. Ex. D at ¶20.) Expert testimony establishes that Mr. Pierotti would not have been able to hear or understand significant portions of the trial. Dr. Lafargue, the expert audiologist, examined the courtroom in which Mr. Pierotti was tried and concluded that "Mr. Pierotti would not have been able to consistently hear or understand any of the speakers in that courtroom without accommodations." (*Id*. Ex. D ¶ 21; *see id*. ¶¶ 17–20) Dr. Lafargue explained that Mr. Pierotti would have had special difficulty understanding when speakers were far away from him, when his view of them was obstructed, when their voices were not amplified to 65 decibels or higher, and when they did not face or speak directly to him. (*Id*. ¶ 15.) Dr. Lafargue further explained that Mr. Pierotti would have had additional difficulty hearing women (at trial, one-third of the witnesses were women) because women generally speak at a higher frequency than men and his hearing

---

[5] In an additional affirmation dated November 28, 2006, Goidell denied the claims by Petitioner and his family that they fully apprised him of the severity of Petitioner's hearing impairment and denied telling the family that Petitioner did not need to hear all of the proceedings.

difficulties would have been made worse by the courtroom's hard surfaces and ambient noise. (*Id.* ¶¶ 8, 15, 20.) Dr. Lafargue concluded that without any accommodation for his hearing impairment, "it would have been extremely difficult for Mr. Pierotti to understand significant portions of courtroom proceedings. He would also have had extreme difficulty hearing whispers, even from someone sitting next to him at the table." (*Id.* at 21.)

On February 26, 2007, Petitioner's motion was denied. The court noted that there was no mention of Petitioner's hearing impairment in his direct appeal as of right and that it was not asserted until the filing of the reply memorandum in the instant habeas petition. Continuing, the court denied the petition, stating:

> Counsel for defendant has quite methodically chronicled instances which were set forth on the record before the Trial Court that establishes the issue of defendant's alleged hearing impairment. Nonetheless, in the direct appeal this claim was not raised. Since the issue of defendant's hearing impairment was available pre appeal, the issue could have been raised upon appeal and his failure to do so precluded consideration of his claim now. . . .
> It is well settled law in this State that an ineffective assistance counsel claim which is based upon facts which are apparent in the trial record should have been raised upon direct appeal and the failure to so do precludes relief pursuant to CPL §440.10.
> . . .

(Hinkle Ex. 11.) A motion for leave to appeal the decision on the CPL 440.10 petition was denied on June 4, 2007. (Hinkle Declar. ¶ 20.)

    2.    <u>Writ of Error Coram Nobis</u>

Petitioner then filed an application with the Appellate Division, Second Department, on February 14, 2008 for a writ of error coram nobis to vacate the Appellate Division's order on direct appeal on the grounds of ineffective assistance of appellate counsel. In support thereof, it was argued that appellate counsel was ineffective for failing to raise both the audibility issue and the lack of effective assistance of trial

counsel. On November 5, 2008, the Appellate Division denied the writ, holding that Pierotti had "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Pierotti*, 56 A.D.3d 494, 865 N.Y.S.2d 912 (2d Dept. 2008). Thereafter, leave to appeal to the Court of Appeals was denied. *People v. Pierotti*, 12 N.Y.3d 761 (2009).

### C. The Habeas Proceedings Resume

By letter dated June 23, 2009, Petitioner advised this Court that all claims were fully exhausted. The matter was referred to a magistrate judge for a Report and Recommendation. That magistrate judge ordered additional briefing. The case was thereafter reassigned to Magistrate Judge Brown.

#### 1. Judge Brown's Report and Recommendation

Judge Brown issued a Report and Recommendation, dated August 13, 2014, recommending that the writ be denied. Judge Brown concluded that Petitioner's audibility and ineffective assistance of trial counsel claims are procedurally barred because they were not raised on direct appeal. Assuming cause for the default, Judge Brown concluded that no actual prejudice existed. As the claim of ineffective assistance of appellate counsel was denied on the merits by the Appellate Division, Judge Brown reviewed that denial under the AEDPA's deferential standard and concluded it was not contrary to, or an unreasonable application of, clearly established federal law. Judge Brown also recommended that the petition be denied as to the seven claims that were initially raised in the habeas petition and that Respondent's motion to strike the reply memorandum which for the first time clearly articulated the audibility and ineffectiveness claims also be denied.

2. <u>This Court's May 15, 2015 Memorandum Order</u>

Over Pierotti's Objections, this Court adopted Judge Brown's recommendation, holding that it could not review the merits of Pierotti's ineffective assistance of trial counsel claim because the state court had rejected the claim on an independent state procedural ground; however, it granted a certificate of appealability on that issue.[6]

3. <u>The Second Circuit's Remand</u>

On appeal, the Second Circuit held that this case fell within the limited category of exceptional cases where the "exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question" and remanded the matter to this Court to consider the merits of Petitioner's ineffective assistance of trial counsel claim. *Pierotti v. Walsh*, 834 F.3d 171, 180 (2d Cir. 2016).

Following remand the parties were invited to provide supplemental submissions, which they did. Both sides agree that this matter can be determined without a hearing. The matter is now ripe for determination

## DISCUSSION

**I.    Legal Standard – Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel performed deficiently and that the deficiency caused actual prejudice to his defense. *Id*. at 687. *See Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Under the first prong,

---

[6] The Court further held that Petitioner's audibility claim was procedurally barred and that the state court's rejection of the ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, clearly established federal law. Only the Court's ruling on ineffective assistance of trial counsel was appealed.

the court must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. The petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance," *id*. at 690, and establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." *Dunham*, 313 F.3d at 730.

Although the test for ineffective assistance of counsel contains two prongs, the Supreme Court specifically in *Strickland* noted that the federal district courts need not address both components if a petitioner fails to establish either one. The relevant excerpt from that decision reads:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

Since the two *Strickland* requirements are conjunctively stated, the failure to establish either is fatal.

## II. Trial Counsel's Conduct Fell Outside the Wide Range of Professionally Competent Assistance

Based on the evidence presented, the Court has no doubt that Petitioner was unable to hear portions of the trial testimony. It is uncontroverted that at the trial Petitioner, who would normally rely on two hearing aids, had none. Additionally, the expert affidavit submitted attests to the degree of Petitioner's hearing difficulties, which difficulties were compounded by the logistics of the trial. Those logistics included the size of the courtroom, its hard surfaces, the presence of ambient noise and the positioning of the witnesses. Trial counsel's affidavit recounts that on "various occasions" Pierotti indicated that he could not hear what was happening. The affidavits of Petitioner and his family provide further support for Petitioner's inability to hear portions of the trial testimony.

In addition, Petitioner's affidavit and those of his family support the conclusion that trial counsel was aware of Petitioner's hearing impairment. Trial counsel admits such, although disclaiming an awareness of the extent of that impairment. Such disclaimer is unconvincing as he admits that Pierotti indicated on various occasions that he could not hear and that family members spoke to him regarding Petitioner's hearing problems. And, although as discussed below there is nothing to support counsel's assertion that the trial court turned on the assisted listening devices, that assertion evidences an understanding that Petitioner's hearing limitations required accommodation. Moreover, having been advised of the impairment, reasonably competent counsel would have, at the very least, undertaken to determine its parameters.

With respect to trial counsel's assertion that the assisted listening devises were turned on, there is nothing in the trial record to support such an assertion. Even if

counsel's request were made off the record, one would expect that there would be some indication from the trial court that the devices were turned on. Moreover, a juxtapositioning of trial counsel's assertion against his admission that at various times Pierotti indicated he could not hear supports discrediting that assertion.

Just as a court on notice of a defendant's severe language difficulty or hearing impairment, has a duty to provide reasonable accommodation to that defendant, *see United States v. Negron*, 434 F.2d 386 (2d Cir. 1970 (language); *United States v. Crandall*, 748 F.3d 476 (2d Cir. 2014) so too does an attorney aware of his client's hearing impairment have a duty to seek reasonable accommodation for it. Given that here, counsel was aware of Petitioner's hearing impairment, as well as his inability to hear testimony "on various occasions," trial counsel's failure to request reasonable accommodation for his client fell outside the wide range of competent legal assistance.

The Court now turns to the second *Strickland* prong, prejudice.

## III. Can Prejudice Be Presumed?

In addressing the prejudice prong of *Strickland*, Petitioner relies principally upon the presumption of prejudice. Briefly summarized, he maintains that as a result of his counsel's failure to ensure accommodation for his hearing impairment, he was constructively absent from his own trial, could not follow the proceedings, and could not assist in his own defense and as these defects undermined the fairness and integrity of his trial, no further showing of prejudice is required. Respondent disputes that conclusion. Accordingly, the threshold question is whether prejudice may be presumed in the circumstances presented.

A defendant raising an ineffective assistance of counsel claim "can demonstrate prejudice by showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lee v. United States*, -- U.S. __, 137 S. Ct. 1958, 1965 (2017). Establishing reasonable probability requires showing a "probability sufficient to undermine confidence in the outcome" based on "the totality of the evidence before the judge or jury." *Strickland*, 467 U,S, at 694, 696. *Strickland'*s prejudice requirement reflects a defendant's burden to overcome the "presumption of reliability" ordinarily afforded to "judicial proceedings." *Roe v. Flores-Ortega*, 528 US. 470, 482 (2000). There are certain limited cases, however, where prejudice is presumed. *See United States v. Cronic*, 466 U.S. 648 (1984); *United States v. Rondon*, 204 F.3d 376, 379 (2d Cir. 2000) ("In certain limited situations, . . . a defendant . . . need not make a particularized showing of prejudice to obtain relief [under *Strickland*}."). As the Supreme Court stated in *Cronic*:

> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L.Ed.2d 347 (1974), because the petitioner had been "denied the right of effective cross-examination" which "'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' "

466 U.S. at 659.

Although cognizant of the fact that prejudice is to be presumed only in very limited circumstances, *see Weaver v. Massachusetts,* – U.S. –, 137 S. Ct. 1899 (2017) (declining to presume prejudice where the ineffective assistance of counsel claim was

premised on a structural error), *Tippins v. Walker*, 77 F.3d 682, 688–89 (2d Cir. 1996) (stating that when counsel sleeps through critical portions of a trial, it *may* constitute per se ineffective assistance of counsel), the Court concludes that a presumption of prejudice is appropriate in this case.

In reaching this conclusion, the Court places great emphasis on the record evidence that demonstrates the severity of Petitioner's disability. It is undisputed that Petitioner, who normally relied upon two hearing aids, had neither during the entirety of his trial. Hearing tests performed by the New York State Department of Correction less than six months after his trial found that Petitioner (1) could not understand words spoken at a volume below 65 decibels in a quiet room. The volume of normal conversation is 50 to 55 decibels; (2) had trouble hearing high frequencies (sounds above 1000 Hertz) and thus cannot hear the full range of human conversation (which occurs between 500–3000 Hertz); and (3) under ideal conditions could identify only 92% of words spoken one at a time. (Lafargue Aff. ¶¶ 8-10.) Relying on these tests, the unrebutted expert testimony is that Petitioner would have more difficulty hearing speakers at a distance, when his view of the speaker was obstructed and when there were multiple speakers, as well as" high-pitched, excited, upset, or nervous voices" and "whispers of any kind." (*Id*. at ¶¶13-15.)

The logistics of the courtroom during the trial further compounded Petitioner's inability to hear. Witnesses sat far from the defense table, and testified facing the jury or the examining attorney. Logistics presented hearing difficulty for non-hearing impaired persons during jury selection when there was construction noise outside the courtroom. (*See, e.g.,* Trial Tr. at 30, 99, 123, 126, 156, 204, 211.)

As the *Negron* court noted, considerations of fairness requires a defendant's presence and a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. Here, Petitioner was essentially rendered absent for significant portions of his trial. This absence rendered his trial fundamentally unfair. *See generally Weaver*, 137 S. Ct. at 1911 ("[W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim . . . the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair."). In analogous cases, i.e., ones involving a counsel's failure to address a defendant's fitness to stand trial, several courts of appeals have held that prejudice does not depend on the likelihood of a different verdict but on "whether there is a reasonable probability the defendant would have been found unfit had a hearing been held." *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013): *accord Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990) (Because a claim of incompetence does not lend itself well to the outcome test in *Strickland*, "[w]ith respect to the prejudice prong of a claim of ineffective assistance of counsel, [petitioner] need only demonstrate a reasonable probability that he was incompetent, sufficient to undermine confidence in the outcome."). Here, there is a reasonable probability that Petitioner would have been entitled to accommodations. Without accommodation, portions of the trial were, in effect, held in his absence giving rise to an unrebutted presumption of prejudice.

The evidence also demonstrate that Pierotti would be unable to communicate with counsel at the defense table as whispers are difficult for him to understand. (*See* Lafargue Aff. ¶¶ 14, 21; Fishman Aff. ¶ 8). It is appropriate to presume prejudice when a defendant

is denied the right to consult with counsel. *See Cronic*, 466 U.S. at 659 n.25 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding.") (collecting cases); G*eders v. United States*, 425 U.S. 80 (1976) (prejudice presumed where defendant barred from consulting counsel during overnight recess in trial); *Norde v. Keane*, 294 F.3d 401, 413 (2d Cir. 2002) ("a defendant who claims denial of counsel at a critical stage in the proceedings need not show prejudice"); *Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 901–902 (E.D. Mich. 2001) ("depriving [defendant] of an interpreter places his case closer to *Cronic* than *Strickland* on the continuum of ineffective assistance of counsel claims").

The cases involving interpreters relied by Respondent for the proposition that prejudice may not be presumed are inopposite. For example, in *Mendoza v. Keane*, 2006 WL 3050872 (E.D.N.Y. Oct. 23, 2006) the petitioner argued he was denied ineffective assistance of counsel as a result of the state court's denial of requests for an interpreter to enable counsel to consult with his client in preparation for trial. That ruling, it was asserted, effectively limited the opportunities for consultation between counsel and his client and therefor counsel was unable to gain requisite knowledge and insight into his case. In denying the habeas petition, the federal court began its discussion by noting that this argument had been addressed and rejected by the state court and therefore entitled to AEDPA deference. *Id*. at *4. It then went on to enunciate the *Strickland* test, stating that "[e]xcept in specific instances not applicable to this case, prejudice must be established regardless of whether the source of the allegedly deficient performance was the court or counsel himself." *Id*. at *6. The court rejected the contention that petitioner need not

show prejudice because his trial counsel failed to subject the prosecutor's case to meaningful adversarial testing as that claim was not directed to the proceeding as a whole but rather only specific points. Further, the state court had reviewed the record and found counsel's performance fell within the range of reasonable professional assistance; the federal court found no reason to disturb that finding. *Id*. at *6-8. *Mendoza* was not a case where counsel, knowing of his client's inability to speak English, failed to request an interpreter; it was not a case where counsel failed to request an accommodation, rendering his client absent for significant portions of his trial.

Respondent makes much of the fact that Petitioner did not complain of his inability to hear. But that is not the case. It is undisputed that there were repeated complaints, by Petitioner and members of his family, about his inability to hear during the course of the trial, – their complaints were addressed to his trial counsel. Even if assistive devices were turned on at some point as trial counsel opines may have been the case, from the materials submitted it appear to this Court that Petitioner's inability to hear continued. That Petitioner did not address the trial court directly regarding his inability to hear is not surprising. During the pre-trial proceedings, he addressed his inability to hear to his then counsel who brought it to the attention of the presiding judge, thus fueling the expectation that his trial counsel would appropriately address the matter. And when his trial counsel did not raise the issue, Petitioner's reluctance to address the court directly is understandable in view of the judge's somewhat brusque reaction to Petitioner's pro se audibility complaint during the pre-trial proceedings.

Given the nature and severity of Petitioner's hearing impairment and the logistics of the trial setting, Petitioner has overcome the presumption of reliability and prejudice is properly presumed.

Petitioner has met both prongs of the *Strickland* analysis.

**CONCLUSION**

Pierotti's Petition for Writ of Habeas Corpus is GRANTED. "The typical relief in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner . . . ." *Herrera v. Collins*, 506 U.S. 390, 403 (1993). Respondent is therefore ORDERED to release Pierotti within ninety (90) days "unless New York State has, by that point, taken concrete and substantial steps expeditiously to retry [him]." *Pavel v. Hollins*, 261 F.3d 210, 229 (2d Cir. 2001). The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York        s/ Denis R. Hurley
        October 11, 2018                 Denis R. Hurley
                                               United States District Judge